577 So.2d 1376 (1991)
Carl Wayne BURRIS, Appellant,
v.
Mike Gatto GOODYEAR and Reliance Insurance Company, Appellees.
No. 90-296.
District Court of Appeal of Florida, First District.
April 9, 1991.
*1377 Joseph E. Smith, Orlando, for appellant.
Robert C. Cooper, Altamonte Springs, for appellees.
WOLF, Judge.
Claimant, Burris, appeals from a workers' compensation order awarding attendant-care benefits and denying certain other benefits. Claimant asserts the following: (1) The judge of compensation claims (JCC) erred in awarding only eight hours per day for attendant care; (2) the JCC erred in awarding only $4.00 per hour for attendant-care services from August 5, 1982, to April 25, 1989; (3) the JCC erred in not ordering reimbursement for attendant care after April 25, 1989; (4) section 440.13(2)(e)(2), Florida Statutes (1989), which limits reimbursement for nonprofessional attendant care provided by a family member to 12 hours a day is unconstitutional; (5) the JCC erred by not ordering the carrier to reimburse the claimant for an exercise pool which had been installed; and (6) the JCC erred in not ordering the carrier to pay Dr. Woodridge's bill as a medical expense.
The employer/carrier (E/C) filed a cross appeal asserting as follows: (1) The JCC erred by limiting the E/C to seven weeks' credit against its obligation to pay past attendant-care benefits, and (2) the JCC erred in awarding the claimant's wife payment for attendant-care services for eight hours a day.
We determine the following: (1) There was no competent substantial evidence to support the award of either the $4.00 an hour or of attendant care for eight hours a day from August 5, 1982, to April 25, 1989; (2) the JCC erred in not addressing claimant's request for attendant care after April 25, 1989; (3) the JCC did not err in denying claimant's request for reimbursement for the exercise pool or in denying claimant's request to pay Dr. Woodridge's bill as a medical expense; and (4) as conceded by the claimant, the E/C was entitled to 93 days' credit against attendant-care expenses for the entire time claimant was in the hospital. We also find it would be premature to address the constitutional question in light of our findings herein and specifically decline to do so.[1] Only the issues concerning the award of attendant care and the value of said care merit further discussion.[2]
The claimant sustained injury to his lower back in an industrial accident on February 27, 1982. On the day of the accident, he developed severe pain in his lower back after loading used tires on a truck. He also had pain radiating into his left leg. His treating physician, Dr. Tessler, treated him conservatively until July 8, 1982, at which time he referred the patient to a physician in Jacksonville who performed surgery on the claimant's lower back. The claimant reached maximum medical improvement in August of 1983 with an impairment rating of 25 percent. The claimant continued to have lower back pain with weakness in his left leg.
As a result of claimant's injuries, he needed some level of assistance with his activities of daily living from the time of his discharge from the hospital on August 5, 1982. The evidence concerning claimant's condition from August, 1982, until June, 1987, is somewhat in conflict. There is testimony that claimant needed assistance with bathing, dressing, getting into and out of the bathtub, getting onto and off the toilet, putting on and taking off his brace, and other activities of daily living.
*1378 There is evidence, however, that in 1984, the claimant was walking with a rolling walker and using a swimming pool. As of April 1985, he was using a walker to get to the bathroom and still walking with it in July of that year. In 1986, he was using a wheelchair much of the time, but he still could use a walker if, for instance, a bathroom was not wheelchair accessible.
There was evidence that during a portion of this period claimant was able to drive his van for up to 50 miles at a time to attend meetings or conventions. At a meeting on June 28, 1987, an episode occurred which resulted in paralysis of his right side.[3] According to the claimant's wife, the claimant never regained full use of his right leg following this episode. From June, 1987, until April, 1989, it appears that claimant's ability to care for himself was severely impeded.
On April 24, 1989, the claimant was admitted to Lucerne's Spinal Center where he stayed until May 11, 1989. The claimant was treated by Dr. Shea. According to the doctor, the claimant was ambulating only with the use of a wheelchair when he was admitted. Dr. Shea diagnosed the claimant's condition as a result of degenerative disk disease, the result of two previous lumbar laminectomies, extreme obesity, abdominal surgical procedures, adjustment disorder, depression, and extended bedrest. During the course of treatment at Lucerne, the claimant became increasingly independent. He was able to use an electric wheelchair, able to dress his upper and lower extremities, and taught skills for getting his shoes on. He was able to stand with a leg brace locking his ankle for about five minutes.
Various witnesses testified as to claimant's need for attendant care since the time of the industrial accident. Dr. Richard Tessler, claimant's treating physician, testified that from August, 1982, the claimant needed assistance in all activities of daily living and that he would need somebody present for 24 hours a day.
Dr. J. Darrell Shea, who first examined claimant upon admission to the Lucerne Spinal Center on April 24, 1989, testified that upon release from the Lucerne program, claimant needed one or two hours of nonskilled attendant care. Dr. Shea testified that the claimant probably needed twice as much attendant care prior to arriving at Lucerne, but that he was speculating in rendering this opinion.
Frank Woolrich, a rehabilitation consultant, interviewed the claimant and inspected his house in order to determine how to make it handicap accessible. The first interview was conducted in the claimant's home on March 18, 1988. Dr. Woodridge found that it would be unsafe for the claimant to live alone as he had problems in caring for himself and in getting out of the house in case of an emergency. He said he could not render an opinion that the claimant needed hands-on assistance on a 24-hour basis, because "it's one of those things where you need help, you need help and when you don't, you don't." He would not, however, recommend that claimant live alone. Darlene Fatula, a rehabilitation expert, testified that in August of 1988 claimant needed only three to four hours of direct care, but that he should not be left alone.
Two witnesses testified as to the value of the necessary attendant care. The witness for the claimant stated that the value of attendant care from the time of the accident through the time of the hearing ranged from $6.50 to $8.25.[4] The E/C's witness testified that the value of a certified nurse attendant was $4.00 from 1982 until 1985, and had risen to $5.25 during 1989. Both witnesses acknowledged that mere companion care would be somewhat lower, but neither witness testified as to *1379 the actual cost. In addition, all attendant care rendered by the wife after October 1, 1988, would be governed by the provisions of section 440.13(2)(e), Florida Statutes (Supp. 1988). See Williams v. Amax Chemical Corp., 543 So.2d 277 (Fla. 1st DCA 1989).
The JCC's award of "attendant care services to Faye Burris, claimant's wife, at the rate of $4.00 an hour, eight hours a day, from August 5, 1982 to April 25, 1989," must be reversed because it is not apparent from the record or from the JCC's order how the JCC arrived at either the time or the value figures.
The JCC's determinations concerning attendant care must be based on competent substantial evidence. See Williams v. Amax Chemical Corp., supra, and Builders Square v. Drake, 557 So.2d 115 (Fla. 1st DCA 1990). Further, while a JCC may under certain circumstances reject unrefuted medical testimony as to attendant care, it is improper to do so without giving sufficient reasons. Mirlisena v. Chemlawn Corp., 527 So.2d 908 (Fla. 1st DCA 1988). Caron v. Systematic Air Services, 576 So.2d 372 (Fla. 1st DCA 1991).
It appears that Dr. Tessler's testimony concerning the necessary attendant care is the only expert medical testimony concerning the claimant's need for attendant care from the date of the accident until April, 1989.[5] Specifically, no other expert gave an opinion concerning the necessity for attendant care prior to Darlene Fatula's visit of August, 1988. At that time, she said that claimant required three to four hours of attendant care.
The JCC gives no reason for rejecting Dr. Tessler's opinion concerning attendant care during the initial period, nor is it apparent from the record why that opinion was rejected. In addition, for the period from August, 1988, until April, 1989, it is unclear how the JCC arrived at eight hours a day attendant care.
In the period after claimant's release from Lucerne, it appears that testimony would support findings of two, four or 24 hours of attendant care. The JCC failed to address claimant's request for benefits during that time period. The E/C argues that it has voluntarily provided two hours of attendant care for that period and that the JCC's failure to address that period should be considered to be acceptance of the two-hour period. We reject this argument and find that the claimant is entitled to a ruling on their request.
It is also not apparent how the JCC arrived at the value of attendant care. The $4.00 an hour figure was only supported by the E/C's witness for the period from 1982-1985. All other testimony concerning the market value for certified nurse attendant care for the period from 1985 until October 1, 1988, was substantially higher than $4.00. While there is some evidentiary support for the argument that a portion of the required care for this person was for nonprofessional care, there is no competent evidence to determine what the value of this care would be. The JCC's finding concerning the value of attendant care from 1986 forward is, therefore, reversed and remanded for a determination of an appropriate rate that is supported by competent substantial evidence. See Williams v. Amax Chemical Corp., supra.
Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.
ALLEN, J., concurs.
ERVIN, J., concurs with written opinion.
ERVIN, Judge, concurring.
Because of this court's decisions in Thorarinsson v. Robert F. Wilson, Inc., 563 So.2d 710 *1380 (Fla. 1st DCA 1990); Firestone Tire & Rubber v. Knowles, 561 So.2d 1293 (Fla. 1st DCA 1990); King Lumber Co. v. Bloomfield, 560 So.2d 389 (Fla. 1st DCA 1990); and Williams v. Amax Chemical Corp., 543 So.2d 277 (Fla. 1st DCA 1989), construing Section 440.13(2)(e), Florida Statutes (Supp. 1988), as applying to injuries occurring before the effective date of that amended statute, I feel constrained to concur with the majority's opinion. I agree with the majority that it is premature to consider whether that portion of section 440.13(2)(e)2, limiting reimbursement for nonprofessional attendant care provided by a family member to twelve hours a day is unconstitutional. Nevertheless, I wish to express some doubts about the construction of that statute in this court's opinions which state or imply that subsequent amendments to the statute are applicable to workers who suffered industrial injuries before the effective date of the amendments.
Effective October 1, 1988, section 440.13(2) was amended to provide, inter alia, that in the event a family member is not employed, the per-hour value of reimbursement for attendant care shall be that provided by the federal minimum wage, and, if the family member was employed and elected to leave such employment to offer attendant or custodial care, the per-hour value of such care would be the per-hour value of such family member's former employment, which was not to exceed the per-hour value of such care available in the community at large. See Ch. 88-372, § 1, Laws of Fla. The obvious intent of this legislation was to supersede case law which had held that a family member providing custodial care to an injured worker was entitled to reimbursement at the market rate in the community where the worker resided. See Southland Corp. v. Anaya, 513 So.2d 203 (Fla. 1st DCA 1987); Sheraton Bal Harbour v. Platis, 447 So.2d 987 (Fla. 1st DCA 1984).
Thereafter, section 440.13(2)(e)2 was again amended, effective October 1, 1989, by adding the following sentence: "In no event shall a family member providing nonprofessional attendant or custodial care pursuant to this paragraph be compensated for more than 12 hours per day." Ch. 89-289, §§ 9, 45, Laws of Fla.
In my judgment the above amendments to section 440.13(2) have no applicability to industrial accidents or injuries occurring before the amendments' effective dates because they work substantive changes and thus may be applied only to injuries occurring subsequent to their enactment. Thus, if a family member provided attendant or custodial care to a worker injured before the enactment of the amendments, such person, in my judgment, would be entitled to both the market rate available in the community at large, and to any number of hours in excess of twelve, if need therefor were established, both before and following the effective dates of the amendments.
Several significant opinions of the Florida Supreme Court indicate that benefits available to a worker at the time of his or her injury cannot be impaired due to the later passage of enactments reducing such benefits. For example, in Walker & LaBerge, Inc. v. Halligan, 344 So.2d 239 (Fla. 1977), the supreme court was confronted with the question of whether an amended statute withdrawing immunity from suit in workers' compensation cases applied to permit an action for damages in negligence brought on behalf of a worker who was injured before the amendment's effective date. The court concluded that the date of the accident controlled the question of which of the two statutes would apply, and therefore the exclusiveness of the workers' compensation remedy barred the action. In reaching its decision, the court considered the following two cases in which it had given retroactive application to statutory provisions which, similar to the statutes under consideration in the case at bar, made no clear legislative expression of whether retroactive application was intended: Tel Service Co. v. General Capital Corp., 227 So.2d 667 (Fla. 1969), which concerned *1381 retroactive application of an amended statute permitting a corporate borrower to recover only interest and not principal on a usurious transaction, and Summerlin v. Tramill, 290 So.2d 53 (Fla. 1973), which involved the issue of which standard of care to apply under the guest statute.
From a superficial reading of Tel Service Co., one might conclude that a statutory amendment which reduces the amount of benefits available to an employee before its effective date may be given retrospective application; however, a closer examination of both Tel Service Co. and Walker & LaBerge, Inc. reveals the contrary. In Tel Service Co., the Florida Supreme Court held that an action predicated on remedies provided by the usury statutes created no vested substantive right, but only an enforceable penalty which had retroactive application. Tel Serv. Co., 227 So.2d at 671. The supreme court in Walker & LaBerge, Inc. distinguished the facts in Tel Service Co. from those before it, observing that the nature of the amendments involved in Tel. Service Co. was basically procedural and affected only the measure of damages for vindication of a substantive right. It pointed out that an "[a]lteration of such measure of damages did not work any modification of fundamental substantive rights." Walker & LaBerge, Inc., 344 So.2d at 243.
It is, however, inappropriate to analogize the measure of damages available to a party in a civil action to those benefits secured to the employee and employer at the time of an industrial injury. As the court emphatically stated in Walker & LaBerge, Inc., rights under the workers' compensation act arise from the contractual relationship between the parties existing at the time of injury. Id. Therefore, because of the unique nature of the employment contract which governs the substantive rights of the parties, a later enactment by the legislature cannot disturb those rights, in the absence of any clearly expressed legislative statement to the contrary. As a consequence, any such statutory change should ordinarily be given prospective application only as to injuries occurring after the statute's effective date. Id. This rule is perhaps best stated in Sullivan v. Mayo, 121 So.2d 424 (Fla. 1960), cert. denied, 133 So.2d 647 (Fla. 1961), as follows:
It is well established in Florida that the substantive rights of the respective parties under the Workmen's Compensation Law are fixed as of the time of the injury to the employee. This is so because the acceptance of the provisions of the Workmen's Compensation Law by the employer, the employee, and the insurance carrier constitutes a contract between the parties which embraces the provisions of the law as of the time of the injury. Consequently, a subsequent enactment could not impair the substantive rights of the parties established by this contractual relationship.
Id. at 428 (citations omitted).
The supreme court, in other cases, has also broadly stated that both the statutory and decisional law existing on the date of an industrial accident must prevail in a workers' compensation case. Kerce v. Coca-Cola Co.-Foods Div., 389 So.2d 1177 (Fla. 1980); Simmons v. City of Coral Gables, 186 So.2d 493 (Fla. 1966). Indeed, the rule has been applied in numerous Florida decisions to a variety of contexts. See, e.g., Cone Bros. Contracting v. Gordon, 453 So.2d 420 (Fla. 1st DCA 1984) (statutory amendments which effect an increase in the discount rate and place a cap on lump-sum advance payments available to an employee cannot be retroactively applied to reduce a claimant's award as to injuries occurring before the effective date of the amendments), review denied, 461 So.2d 113 (Fla. 1985); Special Disability Trust Fund, Dep't of Labor & Employment Sec. v. Motor & Compressor Co., 446 So.2d 224 (Fla. 1st DCA 1984) (a statutory amendment permitting an employer/carrier to be reimbursed from the Special Disability Trust Fund for vocational rehabilitation benefits could not be retroactively applied); State Dep't of Transp. v. Houlihan, 402 So.2d 490 (Fla. 1st DCA 1981) (the compensation *1382 rate in effect at the time of the worker's injury is a substantive matter which became fixed at such time, and the rate enacted following the worker's injury could not be retroactively applied); Subterranean Circus v. Lewis, 319 So.2d 600 (Fla. 1st DCA 1975) (the law in effect at the time of injury pertaining to the number of employees necessary for the employer to secure worker's compensation controls the issue of insurance, and it was of no consequence that, as of the date of trial, the law had been changed to require a lesser number of employees), cert. denied, 333 So.2d 41 (Fla. 1976); Fullerton Metal Co. v. Abell Howe Co., 299 So.2d 151 (Fla. 3d DCA 1974) (an amendment to the Workers' Compensation Law, eliminating a cause of indemnity, could not be applied retrospectively so as to destroy a cause of action which was in litigation at the time the amendment became effective).
The general rule followed in Florida, that the law in force at the time of the injury or accident governs one's rights to workers' compensation, and that later amendments thereto are not applicable to such injuries, is followed as well in the majority of the jurisdictions which have addressed the question. See 99 C.J.S. Workmen's Compensation § 21 (1958) (hereafter 99 C.J.S.). See also Annotation, Time to be Considered in Determining Whether a Case is Within the Earlier or Later Provisions of the Workmen's Compensation Act, as Regards Compensation Recoverable, 82 A.L.R. 1244 (1933). This rule, moreover, has been applied in other jurisdictions as to the amount, period, or rate of compensation, as well as the right to medical services or remedial care. 99 C.J.S. § 21, at 134-135.
If, however, the effect of the amendment is remedial, retroactive application of the statute is permitted. For example, in Myers v. Carr Construction Co., 387 So.2d 417 (Fla. 1st DCA 1980), the issue before the court was which statute controlled the applicable rate of interest payable on a worker's compensation award. At the time of injury the applicable rate was six percent, and the statute was subsequently amended to allow payment of twelve percent interest. We held that ordinary principles of construction do not restrict retroactive application of provisions of a statute which are remedial, and that the amendment therefore applied to the award. This court subsequently distinguished the facts in Myers from those in Cone Bros. Contracting v. Gordon, noting that in Myers the statute enhancing the benefits available to a worker was remedial, whereas the statutory amendment considered by the court in Gordon substantially reduced a claimant's award which had become fixed at the time of the injury. Gordon, 453 So.2d at 423 n. 2.
But for the line of cases from this court permitting a reduction in reimbursement to a family member providing attendant care to an injured worker following the effective date of the amendment, I would conclude, absent any consideration of the constitutional issue, that the statute in effect at the time of the worker's injury fixes the rights and obligations of the parties, and that those rights and obligations cannot be reduced by subsequent legislation, absent a clear legislative expression to the contrary. This conclusion is bolstered by the fact that nothing in the statutory amendments indicates that the legislature intended the amendments to apply retroactively.
NOTES
[1] It has not been determined that claimant is entitled to more than 12 hours of attendant care after October 1, 1989, the effective date of the statute.
[2] All issues concerning modifications to claimant's house and responsibility for providing a special lift for the swimming pool have been resolved and are not the subject of this appeal.
[3] There is disputed evidence as to whether claimant suffered a stroke.
[4] The claimant's witness testified as to varied costs for care depending on the time of day during various time periods from the date of the accident until the date of the hearing.
[5] The testimony of Dr. Shea cannot be considered competent evidence as he indicated that his view was only speculative. He further indicated that he would have to defer to Dr. Tessler concerning his opinion for attendant care for the period prior to his examination.